**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **TRAXCELL TECHNOLOGIES, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 6:24-mc-00613-ADA |
| | § | |
| **CELLCO PARTNERSHIP D/B/A** | § | |
| **VERIZON WIRELESS** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**VERIZON'S OPPOSITION TO TRAXCELL'S MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Page

### Contents

I.      BACKGROUND ...................................................................................................2

    A.    THE VERIZON I FEES ORDER ......................................................................2

    B.    THE STATE COURT PROCEEDINGS ...............................................................4

    C.    THE BANKRUPTCY COURT PROCEEDINGS ....................................................5

    D.    THE VERIZON II PROCEEDINGS ...................................................................6

II.     ARGUMENT .......................................................................................................7

    A.    COMITY COUNSELS STRONGLY AGAINST ISSUING A TRO ............................7

      1.    Texas State Court Already Determined The Question Of The Eastern District's Jurisdiction ..................................................................8

      2.    The Question Of The Eastern District's Jurisdiction Should Be Decided By The Eastern District ..................................................................9

      3.    Revisiting The Question Of The Eastern District's Jurisdiction Would Set A Dangerous Precedent ..................................................................9

    B.    TRAXCELL FAILS TO ESTABLISH ANY OF THE ELEMENTS FOR ISSUING A TRO ...........10

      1.    Traxcell Will Not Succeed On The Merits ................................................10

      2.    Traxcell Will Not Suffer Irreparable Injury ..............................................13

      3.    The Balance Of Harms Weighs In Verizon's Favor ..................................14

      4.    The TRO Will Disserve The Public Interest ..............................................14

III.    CONCLUSION ..................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ballenger v. Mobil Oil Corp.*,
  138 Fed. App'x 615 (5th Cir. 2005) ........................................................................12

*Barclaysamerican/Com., Inc. v. Consumer Indus., Inc.*,
  585 F. Supp. 1340 (W.D.N.C. 1984) ...........................................................7, 8, 9, 10

*Baum v. Blue Moon Ventures, LLC*,
  513 F.3d 181 (5th Cir. 2008) ..........................................................................14, 15

*Bellamy v. Ocwen Loan Servicing, LLC*,
  2014 WL 12493295 (W.D.Tex., 2014) .....................................................................11

*Highway Equip. Co. v. FECO, Ltd.*,
  469 F.3d 1027 (Fed. Cir. 2006) ........................................................................11, 12

*Levin v. Com. Energy, Inc.*,
  560 U.S. 413 (2010) .............................................................................................8

*Lough v. Washington State Department of Social and Health Services*,
  2022 WL 2910132 (W.D.Wash., 2022) ...................................................................11

*Petro Franchise Sys., LLC v. All Am. Properties, Inc.*,
  607 F. Supp. 2d 781 (W.D. Tex. 2009) ....................................................................14

*Raniere v. Microsoft Corp.*,
  887 F.3d 1298 (Fed. Cir. 2018) ............................................................................12

*Raytheon Co. v. Samsung Elecs. Co.*,
  No. 2:15-CV-341-JRG-RSP, 2016 WL 11639659 (E.D. Tex. Feb. 22, 2016) ......................13

*Sanchez v. Wells Fargo Bank, N.A.*,
  2020 WL 2086549, at *3 (W.D.Tex., 2020) .............................................................11

*Seven Arts Filmed Ent. Ltd. v. Jonesfilm*,
  538 F. App'x 444 (5th Cir. 2013) .......................................................................14, 15

*Simmang v. Texas Bd. of L. Examiners*,
  346 F. Supp. 2d 874 (W.D. Tex. 2004) ......................................................................8

*Sw. Airlines Co. v. City of San Antonio*,
  No. SA-24-CV-01085-XR, 2024 WL 4866272 (W.D. Tex. Oct. 1, 2024) ....................10, 13

*Traxcell Techs., LLC v. AT&T Corp.*,
    No. 2:17-cv-00718 (E.D. Tex.)..................................................................................... *passim*

*Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*,
    No. 6:20-cv-01175-ADA (W.D. Tex.)..............................................................6, 13

*Traxcell Techs. v. AT&T Corp.*,
    Nos. 23-1246, 23-1436 (Fed. Cir. Jan. 19, 2023) ................................................3

*In re Verizon Wireless Pers. Commc'ns, LP*,
    No. 10-23-00081-CV (Tex. App. March 15, 2023) ..............................................5

*In re Verizon Wireless Pers. Commc'ns, LP*,
    No. 10-24-00074-CV (Tex. App. October 22, 2024) ...........................................5

*Verizon Wireless v. Traxcell Techs., LLC*,
    No. 6:24-cv-00163-ADA-DGT (W.D. Tex.)........................................................6

**Statutes**

35 U.S.C. § 285...............................................................................................3, 10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 58 ......................................................................................................12

Fed. R. Civ. P. 60(b)(4)..............................................................................................10

Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") hereby files this Opposition to Plaintiff Traxcell Technologies, LLC's ("Traxcell") Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion" or "Motion").

The TRO Motion is Traxcell's latest attempt to avoid complying with a court order – issued by the Eastern District of Texas and affirmed by the Federal Circuit – to pay Verizon's attorneys' fees. The purported basis for this motion and new action is that the Eastern District did not have the authority to rule on the underlying fee motion. Traxcell argues that the Eastern District somehow reconsidered the merits of the case in awarding the fees and the appeal "mandate rule" prohibited any reconsideration. According to Traxcell, this left the Eastern District without jurisdiction and rendered the fee award void.

As the Court may recall, the Eastern District found that Traxcell had engaged in litigation misconduct in an earlier patent action (by maintaining objectively meritless positions), and ordered it to pay Verizon more than $500,000 in attorneys' fees. Traxcell appealed the Eastern District's order granting summary judgment to Verizon, and separately appealed its fee award. The Federal Circuit affirmed both determinations. Traxcell's petition to the U.S. Supreme Court for certiorari was not granted.

Following the Federal Circuit's affirmance of the fee award, rather than simply complying with the Eastern District's order, Traxcell and its counsel have continued to resort to frivolous motion practice. Specifically, several months ago, Traxcell filed a so-called "Emergency Motion" in the Eastern District litigation, making the exact same substantive arguments as it makes here. The motion is opposed and pending. Not content to wait, Traxcell now asks *this* Court to decide the issue by resorting to the extraordinary Temporary Restraining Order ("TRO") procedures.

1

Suffice it to say, Traxcell's Motion is improper in principle and deficient in substance. On principle, comity weighs strongly against the Motion because (1) the Texas state Court of Appeals has already ruled on the question of the Eastern District's jurisdiction to issue the award, (2) the question of the Eastern District's jurisdiction is a matter that should not be decided by this Court where there is a pending motion in the Eastern District on this exact issue, and (3) abuse of the TRO procedure to ask district courts to overrule one another should not be countenanced.

On the substance of the Motion, Traxcell has not met its burden to secure a TRO. First, Traxcell cannot establish likelihood of success on the merits of the underlying action, both because it fails to plead an action upon which relief could be granted, and because it duplicates an argument that it has already lost. Second, Traxcell cannot demonstrate that it will suffer irreparable harm absent a TRO because the fee award has already been in place for nearly two years. Third, Traxcell cannot show that the balance of harms weighs in its favor, because the only harm that Traxcell pleads is the supposed injury of having to obey a valid court order. And fourth, Traxcell cannot show that the requested relief would serve the public interest. To the contrary, the requested relief would encourage vexatious litigants to flout court orders. For all of these reasons, Traxcell's Motion should be denied.

## I.    BACKGROUND

As this Court is aware, the parties here are not strangers. Their history is outlined below, however, to highlight how Traxcell is, yet again, unnecessarily forcing Verizon to defend its valid award of attorneys' fees.

### A.    The Verizon I Fees Order

In 2017, Traxcell sued Verizon in the Eastern District alleging infringement of certain patents. *See Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718 (E.D. Tex.) ("*Verizon I*"). On April 15, 2020, Judge Schroeder in the Eastern District granted summary judgment of non-

infringement in Verizon's favor. Baron Decl., Exhibit 1.  On October 12, 2021, the Federal Circuit affirmed the summary judgment ruling. Baron Decl., Exhibit 2 ("Mandate").

After Judge Schroeder granted summary judgment in Verizon's favor, on April 29, 2020, Verizon moved for its attorneys' fees pursuant to 35 U.S.C. § 285.  Baron Decl., Exhibit 3. Following Traxcell's unsuccessful appeal of the summary judgment ruling, Magistrate Judge Payne granted the fee motion, awarding Verizon its fees and finding the case "'exceptional' under § 285 based on Traxcell's pursuit of objectively baseless infringement theories and filing of meritless motions that disregarded the earlier rulings."  Baron Decl., Exhibit 4 at 7; as amended by Baron Decl., Exhibit 5.  On April 11, 2022, Traxcell objected to Magistrate Judge Payne's order.  Baron Decl., Exhibit 6.  On December 22, 2022, Judge Schroeder overruled Traxcell's objections and adopted the fee order, finding that "Traxcell's conduct, viewed considering the totality of the circumstances, renders this case exceptional under 35 U.S.C. § 285" because "Traxcell continued to pursue theories that it knew or should have known were baseless" and "filed meritless motions and argued positions that had already been rejected."  Baron Decl., Exhibit 7 at 3.  Judge Schroeder ordered Traxcell to pay within thirty days of that 2022 Order.  *Id.* Traxcell did not pay Verizon or post a supersedeas bond.

Traxcell then appealed the award of attorneys' fees.  Baron Decl., Exhibit 8; *Traxcell Techs. v. AT&T Corp.*, Nos. 23-1246, 23-1436 (Fed. Cir. Jan. 19, 2023).  On July 13, 2023, the Federal Circuit affirmed Judge Schroeder's award of attorneys' fees to Verizon.  Baron Decl., Exhibit 9.

Traxcell next filed a petition for rehearing *en banc*.  Baron Decl., Exhibit 10.  The Federal Circuit denied that petition on August 29, 2023.  Baron Decl., Exhibit 11.

On November 22, 2023, Traxcell filed a petition for writ of certiorari in the United States Supreme Court. Baron Decl., Exhibit 12. The petition was denied on January 8, 2024. Baron Decl., Exhibit 13.

On September 23, 2024, long after making its appellate arguments before the Federal Circuit and the United State Supreme Court, Traxcell filed an "Emergency Motion" in the Eastern District, arguing that the Eastern District lacked jurisdiction to grant the award of attorneys' fees, similar to the arguments it makes in this case. Baron Decl., Exhibit 14. Verizon opposed the "Emergency Motion" on September 27, 2024. Baron Decl., Exhibit 15. The Eastern District "Emergency Motion" is pending.

* * *

To date—nearly two years after the award of attorneys' fees—Traxcell has not paid Verizon a cent of the money it owes.

**B.    The State Court Proceedings**

While these events were transpiring, on February 10, 2023, Verizon filed a Petition to Enforce Foreign Judgment in the District Court of McLennan County, Texas to enforce the attorneys' fees award from the Eastern District. Baron Decl., Exhibit 16. On February 17, 2023, Verizon filed a motion seeking appointment of a receiver and turnover of Traxcell's assets, including the asserted patents. Baron Decl., Exhibit 17.

On March 7, 2023, the District Court of McLennan County, Texas granted Verizon's motion seeking appointment of a receiver. Baron Decl., Exhibit 18. The Receivership Order requires Traxcell to turn over all assets including "all patents issued by the United States Patent and Trademark Office that are assigned to Traxcell so that they may be sold by the Receiver." *Id.* ¶ 4. The state court's order further states that "[t]he Receiver, to the exclusion of Traxcell, is the only party entitled to possess, sell, liquidate, and otherwise deal with Traxcell's property." *Id.* ¶ 12.

On March 15, 2023, Traxcell filed a notice of appeal of the Receivership Order.  Baron Decl., Exhibit 19; *In re Verizon Wireless Pers. Commc'ns, LP*, No. 10-23-00081-CV (Tex. App. March 15, 2023) ("Receivership Order appeal").   On April 20, 2023, the District Court of McLennan County, Texas set a supersedeas bond at $100,000 and on April 25, 2023, Traxcell posted the $100,000 supersedeas bond.  Baron Decl., Exhibit 20 at 2.

After learning that Traxcell attempted to fraudulently transfer its patents, on March 12, 2024, Verizon filed a writ of injunction in the Tenth Court of Appeals, Waco, Texas and, on March 20, 2024, the Court granted temporary injunctive relief.  Baron Decl., Exhibits 21, 22; *In re Verizon Wireless Pers. Commc'ns, LP*, No. 10-24-00074-CV (Tex. App. October 22, 2024).  On October 22, 2024, the Tenth Court of Appeals entered final judgment, ordering Traxcell enjoined pending the final decision in the Receivership Order appeal.  Baron Decl., Exhibit 23.

On November 14, 2024, Tenth Court of Appeals, Waco, Texas affirmed the Receivership Order, finding no reversable error and further awarding Verizon judgment against Traxcell for all its appellate costs.  Baron Decl., Exhibit 24.

### C.    The Bankruptcy Court Proceedings

On September 19, 2023, Traxcell filed for bankruptcy in the Western District of Texas. Baron Decl., Exhibit 25.  After Verizon filed a motion to dismiss and the Bankruptcy Court held a hearing, on January 29, 2024, the Bankruptcy Court dismissed Traxcell's bankruptcy as a bad faith filing.  *See* Baron Decl., Exhibit 26.  Specifically, the Bankruptcy Court found that Traxcell had "no realistic prospects of rehabilitation or even a business to reorganize" and that the case was "an attempt to relitigate the Receivership Order."  *Id.* at 22.  The Bankruptcy Court noted that it appeared that Traxcell only filed the bankruptcy "to prevent the transfer to a receiver of Traxcell's only valuable assets, its patent infringement lawsuits."  *Id.* at 14.  The Bankruptcy Court further noted "that Traxcell lacks any realistic prospects of generating income to pay their claim" to

Verizon because "Traxcell's only potential source of funding for a successful rehabilitation would come from the Western District Litigation" and "[g]iven the negative outcome of the Eastern District Litigation, and the fact that Traxcell must first unwind the Receivership Order to even have standing to pursue the Western District Litigation, this Court is not convinced that Traxcell has a reasonable likelihood of rehabilitation." *Id*. at 16.

### D.    The Verizon II Proceedings

On December 21, 2020, Traxcell sued Verizon in the Western District alleging infringement of patents related to the patents asserted in *Verizon I*.  Baron Decl., Exhibit 27 at 1; *Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*, No. 6:20-cv-01175-ADA (W.D. Tex.) ("*Verizon II*").

On March 14, 2023, the Western District dismissed Traxcell's claims against Verizon for lack of subject matter jurisdiction, finding that Traxcell held less than all substantial rights to the asserted patents due to the Receivership Order.  Baron Decl., Exhibit 28 at 5.

On June 7, 2023, the Western District vacated the March 14, 2023 dismissal because the execution of the Receivership Order had been stayed.  Baron Decl., Exhibit 29 at 5.  The Western District nevertheless stayed the *Verizon II* case pending resolution of the appeal of the fee order at the Federal Circuit and pending resolution of the Receivership Order appeal.  *Id.*

On February 19, 2024, Traxcell filed a motion to lift the stay and substitute Traxcell with a supposed new entity – Traxcell Technologies II, LLC ("Traxcell 2") – as the plaintiff, based on the purported sale of the asserted patents to Traxcell 2.  Baron Decl., Exhibit 30 at 1.  The motion is currently pending.  In response, Verizon also sued Traxcell and Traxcell 2 on March 28, 2024 to unwind the sale.  Baron Decl., Exhibit 31; *Cellco P'ship d/b/a/ Verizon Wireless v. Traxcell Techs., LLC*, No. 6:24-cv-00163-ADA-DGT (W.D. Tex.).

## II.    ARGUMENT

While styled as a request for a TRO, Traxcell's Motion essentially asks this Court – on an expedited and emergency basis – to overrule the order of another District Court.  This should not be countenanced.  First, the principle of comity weighs very heavily against granting a TRO.  Indeed, Traxcell filed a motion with the Tenth Court of Appeals, Waco, Texas making the same substantive arguments that it makes here and the Court dismissed the motion.  *See* Baron Decl., Exhibit 32 at 1; Baron Decl., Exhibit 33 at n.1.  Traxcell also has an "Emergency Motion" pending before the Eastern District in the underlying matter making the same substantive arguments that it makes here.  Baron Decl., Exhibit 14.  And, of course, Verizon has provided its full-throated response to Traxcell's "Emergency Motion."  Baron Decl., Exhibit 15.  There is no need for Traxcell to trouble yet another court with its regurgitated, frivolous complaints.

Second, Traxcell has not carried its burden on any of the required elements for securing a TRO.  Traxcell will not succeed on the merits because (1) Traxcell pleads no cause of action upon which a TRO could be granted, and duplicates an argument that it has already lost, (2) Traxcell ignores the fact that the fees award has already been in place for nearly two years and circumstances have not suddenly changed, (3) Traxcell has not shown that it would suffer any injury other than having to obey a valid court order, and (4) a TRO would disserve the public interest by encouraging vexatious litigants not to comply with court orders intended to dissuade and constrain them.

### A.    Comity Counsels Strongly Against Issuing A TRO

Courts should take comity into consideration when reviewing TRO requests.  *See Barclaysamerican/Com., Inc. v. Consumer Indus., Inc.*, 585 F. Supp. 1340, 1342 (W.D.N.C. 1984) (refraining from granting a TRO under the principle of comity).  The comity doctrine "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction.  The

7

doctrine reflects 'a proper respect for state functions[.]'" *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 421 (2010) (quoting *Fair Assessment in Real Estate Assn., Inc. v. McNary*, 454 U.S. 100, 112 (1981)).    The comity doctrine equally applies between federal district courts.    *See Barclaysamerican/Com., Inc. v. Consumer Indus., Inc.*, 585 F. Supp. 1340, 1342 (W.D.N.C. 1984) (noting that strong principles of comity weighed heavily against the Western District of North Carolina issuing a TRO preventing the Western District of Texas from hearing a case).

    **1.**    **Texas State Court Already Determined The Question Of The Eastern District's Jurisdiction**

First, the crux of Traxcell's argument – whether the Eastern District had jurisdiction to issue the fee award – has already been ruled on by the Tenth Court of Appeals, Waco, Texas. Comity counsels against asking this Court to enter a contrary determination.

Traxcell previously argued that the Eastern District lacked jurisdiction to grant the fee award in a motion while appealing the Receivership Order to the Tenth Court of Appeals. *See* Baron Decl., Exhibit 32 at 1.  Traxcell's motion was summarily denied.  *See* Baron Decl., Exhibit 33 at n.1.  Here, Traxcell has copied and pasted that same argument into this Motion.  *Compare* Baron Decl., Exhibit 32 *with* D.I. 9.  Given that the jurisdictional question was already ruled on by the Tenth Court of Appeals, this Court should decline to revisit the question under the principle of comity.  *See Levin*, 560 U.S. 413, 421 (2010) ( *See Simmang v. Texas Bd. of L. Examiners*, 346 F. Supp. 2d 874, 888 (W.D. Tex. 2004) ("Principles of comity apply whenever federal courts are asked to review state action or supersede state proceedings.").

### 2. The Question Of The Eastern District's Jurisdiction Should Be Decided By The Eastern District

As noted above, Traxcell asks this Court to rule on the question of the Eastern District's jurisdiction. However, the Eastern District itself should rule on such a question. Comity counsels against this Court taking action for this reason, as well.

The Western District of North Carolina's action in *Barclaysamerican* is instructive. In *Barclaysamerican*, the plaintiff contracted with the defendant on a contract indicating that North Carolina was the appropriate forum for litigation. *See Barclaysamerican*, 585 F. Supp. at 1341. The defendant, disputing its breach, surreptitiously filed suit in Texas before the plaintiff could file suit in North Carolina. *Id.* When the plaintiff subsequently filed suit in North Carolina, it sought to enjoin the Texas litigation. *Id.* However, the Western District of North Carolia refrained from issuing a TRO against the Western District of Texas under the principle of comity, entrusting that Western District of Texas could "adjudicate[e] matters central to the Court's own interest, such as whether the Court's jurisdiction has been fraudulently invoked." *Id.* at 1342.

The same principle applies here. The matter of whether the Eastern District's jurisdiction has been fraudulently invoked is central to the Eastern District's own interest. *Id.* Traxcell should not be allowed to "resolve collaterally matters which can be and more appropriately should be raised directly in the [*Verizon I*] litigation." *Id.* That is particularly true here because Traxcell has already asked the Eastern District itself to rule on this question. Baron Decl., Exhibit 15. Continuing its attempts to evade payment through this Court is improper under the principle of comity.

### 3. Revisiting The Question Of The Eastern District's Jurisdiction Would Set A Dangerous Precedent

By asking this Court to rule on the question of the Eastern District's jurisdiction, Traxcell seeks to establish a dangerous precedent. Parties would be enabled to collaterally attack any

adverse judgments in one jurisdiction by seeking injunctive relief in another jurisdiction. This

problem would only be exacerbated if there were competing injunctions, e.g., if

> one court entered an injunction restraining the litigant from proceeding in the other
> forum and the other forum issued a counter-injunction enjoining the litigant from
> seeking enforcement of the prior injunction. The result of the injunctions would
> only serve to undermine the integrity of two United States District Courts if they
> engaged in this unseeming battle. The time, therefore, to dispose of this unsavory
> spectacle of judicial disorder is when it begins. As Justice Holmes succinctly stated,
> '[u]niversal distrust creates universal incompetence.'
>
> *Barclaysamerican*, 585 F. Supp. at 1342  (quoting *Graham v. United States*, 231 U.S. 474,

480 (1913)).  Accordingly, Traxcell's Motion should be denied at the outset.

**B.    Traxcell Fails To Establish Any Of The Elements For Issuing A TRO**

In the Fifth Circuit, the party moving for a TRO must establish four elements:

> (1) a substantial likelihood of success on the merits; (2) a substantial threat that the
> movant will suffer irreparable injury if the temporary restraining order is denied;
> (3) that the threatened injury outweighs any damage that the temporary restraining
> order might cause the defendant; and (4) that the temporary restraining order will
> not disserve the public interest.

*Sw. Airlines Co. v. City of San Antonio*, No. SA-24-CV-01085-XR, 2024 WL 4866272, at *4

(W.D. Tex. Oct. 1, 2024).  Because a TRO is an "extraordinary and drastic remedy, not to be

granted routinely," the moving party must carry the burden of persuasion "by a clear showing."

*Id.*  Traxcell has not met its burden on any of these elements.

**1.    Traxcell Will Not Succeed On The Merits**

Traxcell cannot establish likelihood of success on the merits for at least two reasons.  First,

Traxcell's Complaint facially fails to plead a cause of action on which relief may be based.  While

Traxcell's Complaint "seeks relief from the § 285 Order . . . pursuant to Federal Rule of Civil

Procedure 60(b)(4)[,]" *see* D.I. 1 at 1, Traxcell has failed to plead an underlying cause of action

that would, if successful, result in this relief being issued.  Rather, the only "cause of action" pled

in the Complaint is "Temporary Restraining Order – Likelihood of Success On The Merits,

Balance Of Equities, And Need for Relief." *See* D.I. 1 at 6. But that is a type of relief, not a cause of action. *See, e.g.*, *Sanchez v. Wells Fargo Bank*, N.A., 2020 WL 2086549, at *3 (W.D.Tex., 2020) (dismissing a request for injunctive relief to prevent the foreclosure of property because the request "is an equitable remedy, not a cause of action" under federal law and there were no substantive claims); *Bellamy v. Ocwen Loan Servicing, LLC*, 2014 WL 12493295, at *2 (W.D.Tex., 2014) (dismissing a complaint under Texas state law where the plaintiff requested injunctive relieve but failed to identify a claim); *Lough v. Washington State Department of Social and Health Services*, 2022 WL 2910132, at *1 (W.D.Wash., 2022) ("[A] motion for a TRO and injunctive relief must rest on a meritorious cause of action."). For this reason alone, Traxcell cannot establish likelihood of success on the merits.

Second, Traxcell asks this Court to rule on the question of whether the Eastern District had jurisdiction to issue the award of attorneys' fees. But this question has already been answered in the affirmative by the Tenth Court of Appeals, Waco, Texas. *See* Baron Decl., Exhibit 33 at n.1. In other words, without a trace of irony, Traxcell is claiming now that it is likely to succeed on an argument that it has already lost. While this Court is certainly not bound by that determination, Traxcell can hardly be heard to argue that it is *substantially likely* to prevail in such circumstances.

For the sake of argument, however, the reasons why Traxcell's jurisdictional claim (that the Eastern District somehow reconsidered the merits of the case in awarding the fees when the Federal Circuit's Mandate prohibited reconsideration) will fail are twofold. Namely, the jurisdictional defect of the Eastern District that Traxcell identifies is imaginary. A District Court retains jurisdiction over a motion seeking exceptional-case attorney's fees under § 285 even after the underlying infringement issues are separately appealed and resolved. *See Highway Equip. Co. v. FECO, Ltd*., 469 F.3d 1027, 1032–33 (Fed. Cir. 2006). This is because "[t]he reach of the

mandate rule . . . is limited to issues *actually decided* by the appellate court." *Ballenger v. Mobil Oil Corp.*, 138 Fed. App'x 615, 618 (5th Cir. 2005) (emphasis in the original). Thus, "'[a] mandate controls on all matters within its scope, but a District Court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.'" *Id.* (quoting *Newball v. Offshore Logistics International*, 803 F.2d 821, 826 (5th Cir. 1986)).

Traxcell's argument is beyond petty. Here, the Mandate addressed only the merits issues in *Verizon I*; it had no effect on the Eastern District's jurisdiction over Verizon's timely motion for fees. *See* Baron Decl., Exhibit 2; *Highway Equip.*, 469 F.3d at 1032–33. Of course, in awarding the attorneys' fees, the Eastern District considered merits issues such as who was prevailing party, as it must, but the Eastern District obviously did not and could not allow the parties to fully relitigate any of those issues. *See Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018) ("The attorney fee award is separately appealable here, and thus collateral, because it cannot alter the merits order or moot or revise decisions embodied in the merits order.") (internal quotations omitted). The mandate rule, accordingly, does not apply and there is no jurisdictional defect.

Furthermore, Traxcell argues that Verizon somehow waived its motion for attorneys' fees by not having the Eastern District rule on the fee motion before the Mandate issued. But Verizon *did* ask the Eastern District to rule on its fee motion prior to the Mandate in the fee motion itself— that is the purpose of any motion. Traxcell offers no legal support for the notion that Verizon should have asked the Federal Circuit to delay issuing its Mandate pending a ruling on the fee motion by the Eastern District. This requirement would disrupt the way § 285 motions have been regularly decided for years. *See Highway Equip.*, 469 F.3d at 1032–33. Not only that, but § 285 contemplates that fee motions will be decided *after* appeal. *See* 35 U.S.C. § 285; Fed. R. Civ. P.

58 Advisory Committee Notes ("Particularly if the claim for fees involves substantial issues or is likely to be affected by the appellate decision, the district court may prefer to defer consideration of the claim for fees until after the appeal is resolved . . . ").  Thus, Verizon did not waive its motion for attorneys' fees and the fee award is valid.

### 2.    Traxcell Will Not Suffer Irreparable Injury

Traxcell states that it will suffer irreparable injury because "absent this Court issuing the TRO, regardless of whether the receiver is able to get Traxcell's assets, it is likely that none of Traxcell's Causes of Action will proceed."[1]  D.I. 9 at 16.  However, Traxcell's argument ignores the fact that the award of attorneys' fees has already been in place for nearly two years. Circumstances have not and will not suddenly change in a way that would justify this extreme remedy.  *See, e.g.*, *Sw. Airlines*, 2024 WL 4866272 at *7 (denying the request for a TRO where the plaintiff would not be harmed for at least four more years while the disputed airport terminal was being built).  This is far from a rotting bananas scenario.  Thus, Traxcell has not shown that it will suffer irreparable injury if the relief is denied.

It should also be noted that Traxcell disingenuously argues that it has already been irreparably harmed.  Traxcell claims that it "lost" the *Verizon II* trial, but that case has merely been stayed.[2]  *See* D.I. 1 at 8; Baron Decl., Exhibit 29 at 5.  Traxcell also claims that it was "forced" into bankruptcy, but that proceeding was found to be a bad faith filing.  *See* D.I. 1 at 8; Baron Decl., Exhibit 26 at 22.  It was not "forced" into filing for bankruptcy in bad faith.

---

[1] At least with respect to *Verizon II*, the asserted patents have all expired and therefore there is no risk of continuing harm to Traxcell.  *See Raytheon Co. v. Samsung Elecs. Co.*, No. 2:15-CV-341-JRG-RSP, 2016 WL 11639659, at *1 (E.D. Tex. Feb. 22, 2016) ("The asserted patent is expired, and thus there is no possibility of continuing harm to [patentee] from infringement.").

[2] In *Verizon II*, Traxcell argues that Traxcell 2 is the owner of the patents and should be party to the case rather than Traxcell.  *See* Baron Decl., Exhibit 30 at 1.  It is therefore hypocritical for Traxcell to claim here that it would be harmed from the "loss" of *Verizon II* when it simultaneously argues that it should not be a party to *Verizon II*.

### 3.    The Balance Of Harms Weighs In Verizon's Favor

In determining the balance of harms, courts compare the harm on the moving party from not issuing the TRO against the harm to the non-moving party from issuing the TRO. *See Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 797 (W.D. Tex. 2009) (denying a request for a TRO where the moving party's harm was outweighed by the non-moving party's harm).

Here, Traxcell has not shown that it would be harmed at all, let alone that it would be more harmed than Verizon. Traxcell argues that it "was hampered by a void judgment, a judgment used by Verizon to cancel the April Trial and further as a tool to deprive Traxcell of its assets, including its patents[.]" D.I. 9 at 17. But Traxcell has not and will not suffer such injury because, as noted above, the award of attorneys' fees is not void. To even call Traxcell's fate if the TRO is not granted an "injury" is a misnomer; Traxcell would simply be required to follow a valid court order and pay Verizon its attorneys' fees. On the other hand, if the TRO is granted, Verizon will be deprived of or, at the very least, delayed in receiving the fees that multiple courts have agreed it is owed. Accordingly, the balance of harms weighs in Verizon's favor.

### 4.    The TRO Will Disserve The Public Interest

For this element, similar to the analysis for the balance of harms element, courts consider the effect of the TRO with respect to the public interest. *See Whole Woman's Health*, 264 F. Supp. 3d at 824. One such interest that courts have protected is the public's interest to be free from "vexatious, abusive, and harassing litigation." *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (noting that District Courts may impose injunctions preventing a vexatious litigant from filing suit). Another interest that courts have vigorously protected is the enforcement of valid court orders. *See Seven Arts Filmed Ent. Ltd. v. Jonesfilm*, 538 F. App'x 444, 446 (5th Cir. 2013) ('[A]ll orders and judgments of courts must be complied with promptly. If a

person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.') (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

Here, Traxcell argues that the TRO will not disserve the public interest because "Verizon's legal maneuvers have kept it from answering for its infringement" and "[t]he public expects that patent rights are to be respected." D.I. 9 at 17. This argument falls flat. While the public does expect patent rights to be respected, the public equally expects to be free from vexatious litigation and for valid court orders to be promptly enforced. *See Baum*, 513 F.3d at 187; *Seven Arts*, 538 F. App'x at 446. Verizon was adjudged as having not infringed Traxcell's patents in *Verizon I* and Verizon was awarded attorneys' fees because of Traxcell's vexatious conduct. *See* Baron Decl., Exhibit 5. Traxcell then filed an unsuccessful appeal to the Federal Circuit, an unsuccessful petition for rehearing *en banc*, and even an unsuccessful petition for writ of certiorari in the United States Supreme Court. Baron Decl., Exhibit 9; Baron Decl., Exhibit 11; Baron Decl., Exhibit 13. Having exhausted its appeals, this Motion is the definition of vexatious litigation and Traxcell should promptly comply with the valid order to pay Verizon its fees. Thus, this Court should deny Traxcell its requested relief.

### III.    CONCLUSION

For these reasons, Verizon respectfully requests that this Court deny Traxcell's Motion for Temporary Restraining Order and Preliminary Injunction.

Dated:  December 17, 2024                                Respectfully,

                                                        */s/ Deron R Dacus*
                                                        Deron R Dacus
                                                        The Dacus Firm, PC
                                                        821 ESE Loop 323
                                                        Suite 430
                                                        Tyler, TX 75701
                                                        Phone: (903) 705-1117
                                                        Fax: (903) 581-2543
                                                        Email: ddacus@dacusfirm.com

                                                        *Attorneys for Defendant Cellco Partnership*
                                                        *d/b/a Verizon Wireless*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of this document via the Court's CM/ECF system.

*/s/ Deron R Dacus*
Deron R. Dacus
